Baldwin, J.
In this case, the testamentary powers of Mrs. Glassell, the testatrix, are derived from the deed of settlement made between her and her husband shortly before their intermarriage. That deed, though apparently designed as a formal instrument, is unskilfully, obscurely and confusedly drawn. The general intent, however, of the parties cannot be mistaken. Their object was to secure to each respectively, complete title and dominion over their respective estates, real and personal; so that on the one hand the wife should acquire no rights of dower or distribution in that of the husband, and on the other, that he should acquire no title by curtesy or otherwise in that of the wife. And so far as concerns right and title, this general purpose was adequately provided for. But in regard to the profits of the two estates which should accrue during the coverture, the separation of interests was not unqualified. The husband was to have the pernency of the profits of both, but subject, so far as regards the wife’s, to be terminated at any moment by the exercise on her part of her powers of alienation. That she had complete powers of alienation which she could exercise during coverture, by deed or will, at her election, is also unquestionable; but difficulties occur as to the formalities that were to be observed in the exercise of those powers.
In the first place, it has been mueh debated at the bar, whether in the exercise of the power of appointment by will, it was sufficient, under the circumstances, for the wife to observe those formalities which the law requires in the case of a feme sole, even upon the supposition that the cumulative formality of a seal, or scroll by way of seal, was contemplated by the deed of settlement.
In the next place, the question arises, whether upon the true construction of the various details of the marriage contract, (in some respects seemingly incongruous,) the intention was to tie the wife down in an appoint *452 ment by will, to the cumulative formality of a seal, according to the language used in one of the clauses of the settlement, or whether that language is to be refer-re4 to a misapprehension of the draftsman in regard to the formalities required by law in relation to wills generally.
And, upon the hypothesis that the deed of settlement requires an appointment by will to be under seal, then the further question occurs in respect to some of the testamentary papers propounded, whether that requisition of the power has been complied with.
Of these questions, I shall consider the last only, my views of that rendering it unnecessary to express an opinion upon the first and second.
And here we must first ascertain the precise state of the question. It is not, in regard to any one of these papers, whether it is a sealed instrument, with a view to its legal effects and consequences as such. The law does not require a will to be sealed ; and it has precisely the same force and effect without as with a seal. The true question is, whether in conformity with the power of appointment the testatrix did affix her seal to the paper, and that is a question of evidence.
Whether a paper be in law a sealed instrument or not, is a question applicable only to contracts. If it has a seal, then it is a deed or specialty; if not, it is a simple contract only: and that is a question of law to be determined by inspection of the instrument. But though the distinctive character of the instrument is to be determined by its intrinsic evidence, the question is still open whether it be the deed of the party, and that must be decided upon evidence aliunde. If by a plea of non est factum, or other proper denial, the fact that the paper was sealed by the party be put in issue, then it must be proved by competent and satisfactory testimony.
In contracts, the presence or want of a seal makes a wide difference in the general character of the instru *453 ment, and its legal effects and consequences. A seal is essential in the conveyance of the title to real estate— it excludes the bar of the statute of limitations—it is indispensable to bind the heirs of the party—it gives a priority in the administration of assets, and in various respects it affects the rules of evidence and the forms of action and pleading. But in a testamentary paper, it has no bearing whatever upon the legal character or operation of the instrument: no solemnity of sealing could make it a specialty; and the act of sealing can amount to nothing more than the performance of a condition.
By the common law a deed is good though no mention of the seal be made in the instrument. In Virginia, by long usage which has received the sanction of a statute, a scroll used by way of seal has the same force and effect as a seal. The decisions of this Court have however required that the substitution of the scroll for a seal shall be recognized upon the face of the instrument ; but they were all in cases of contract, where the question was whether the instrument was a specialty or simple contract. And in no case has it yet been held, that, in the absence of such recognition, evidence is inadmissible to prove that in fact the scroll was affixed to the instrument, with intent that it should stand in place of a seal. There are some strong considerations of policy and convenience to recommend such exclusion, as a general rule, in actions founded upon contract; but there can be none applicable to a case like the present.
Here the question occurs before a Court of Probat— whose province it is to examine the subscribing witnesses, and if their testimony be satisfactory, to establish and perpetuate the due execution of the instrument. Upon what principle or authority are the subscribing witnesses to be estopped, because of some informality in the paper, from proving the fact that it was sealed by the testatrix, or what is the same thing that she adopted a scroll affixed to it by way of seal? In the much *454 stronger case of a deed, there could, I conceive, he no such estoppel in a Court of Probat. Let us suppose the case of a deed, offered as evidence in an action at common law, without other proof of its execution than the or^er a Court of Probat, stating that it was there proved by the subscribing witnesses to have been signed, sealed and delivered by the grantor. Is it possible that this proof would be rejected on the ground that the scroll had not been recognized in the body or attestation of the instrument ? The case supposed is, in principle, that of Parks v. Hewlett, 9 Leigh 511. In that case, it is true, the clause of attestation stated that the instrument, a deed of emancipation, was signed, sealed and acknowledged in the presence of the subscribing witnesses ; but on the other hand the probat order did not state the particulars of the proof, but merely that it was proved by the subscribing witnesses, and ordered to be recorded: and it was therefore necessary to resort to the special attestation, as presumptive evidence, that the subscribing witnesses did prove before the Court of Probat the act of sealing. But suppose the attestation had been general, and the probat order special, the former merely shewing who were the subscribing witnesses, and the latter, that they proved to the Probat Court the signing, sealing and acknowledgment. Would not that have been a stronger case than the one decided, inas- ' much as the evidence of what was proved before the Probat Court would have been express, instead of presumptive ?
It seems to me that the supposed estoppel is without foundation: and I will now briefly notice the other legal objections that have been taken to some of the papers propounded.
The document marked C, propounded as one of the codicils, is a paper executed by Mrs. Glassell, reciting that by her marriage contract, power was reserved to her to dispose of her property by deed or will, and assigning *455 to her daughter, Mrs. Pollock, two obligations for the payment of money, which had been executed to her by her husband Mr. Glassell. These obligations are exhibited with the assignment, and identified by a memorandum on each signed by Mrs. Glassell. The due execution of the assignment is fully proved by the subscribing witnesses; and it is liable to no objection whatever, unless it be that it does not appear upon its face to be a testamentary paper, but on the contrary is in all respects in the form of a deed. It is proved, however, that the assignee was not present when the paper was executed, and that it was never delivered to her; but on the contrary was retained by Mrs. Glassell, in her own possession, with the intent declared by her at the time of its execution, that it was not to be delivered till her death; and an unsigned memorandum to that effect endorsed upon the instrument, by one of the subscribing witnesses at her request.
There is nothing that requires less formality than the body of a will or testament. If it be duly signed, attested and published, it may assume almost any form, provided it be intended by the party to take effect after his death. Thus deeds, bonds, agreements, assignments, &>c., have been established as testamentary. Nor is it necessary that the testator should intend to perform, or be aware that he has performed, a testamentary act. Though it be meant to operate as a settlement, or a deed of gift, or a bond, and not intended to be a Avill or other testamentary paper, but an instrument of a different shape, yet if it cannot operate in the latter, it may nevertheless in the former character. Masterman v. Maberly, 4 Eng. Eccl. R. 103; Pow. on Dev. 8, 9, 10. It is therefore well settled that the form of a paper does not affect its title to probat, provided it be the intention of the deceased that it should operate after his death.
It is contended, however, that this intent must appear upon the face of the instrument, and can never be proved *456 by parol. This would perhaps be true if it were a naked question of intent: but it is something more. The true question is whether the deceased has done a testamentary act; and that involves in this case, not merely the terms, but also the perfect and appropriate execution of the instrument; and the latter is the proper subject of parol evidence. The act was done under a power of appointment in a marriage settlement, which authorized the feme to dispose of her property either by deed or will; but requiring the instrument in the latter case, to be under her hand and seal and attested by two witnesses. The appointment recites the power, and has been made in strict conformity with it, being duly signed, sealed and attested; and here, in a Court of Probat, the matter for decision is, whether the instrument is to be treated as a deed or a will, (its effect being precisely the same in either case;) and that, I think, is to be determined by the fact whether it was substantially, though not in form, delivered as a deed or published as a will; a fact dependent in this case exclusively upon the testimony of the subscribing witnesses.
Delivery is essential to the perfection of a deed, and it lies in parol: though signed and sealed, a deed is not effectual until delivered. The delivery may be actual, as by manual tradition to the grantee, or to another for his use; or it may be constructive, as where it is placed within the power and control of the grantee. It may be proved by evidence express, or it may be inferred from circumstances. It may be inferred from the solemnities of signing, sealing, acknowledgment and attestation, though the custody of the instrument be retained by the grantor; but the inference is presumptive and prima facie, and may be repelled by proofs of a contrary intent. It has never, I believe, been inferred in the teeth of a positive declaration by the grantor, at the time of the transaction, to the contrary.
*457 Here the grantee was not present, nor in any wise participating in the transaction; and there was no valuable consideration. The instrument was not only retained by the donor, but there was an express direction endorsed upon it by her request, that it should be delivered at her death. Can it be doubted that she retained complete power and dominion over it, and might have destroyed or revoked it at any time during her life ? It was, therefore, not perfected as a deed, but ambulatory and revocable until her death; at which time, and not before, it was to take effect. This gave it a testamentary character, however unconscious the testatrix and others may have been that she had performed a testamentary act. It was testamentary in substance, though not in form, and the solemnities employed operated not as delivery, but as a publication.
The very reason which prevents this assignment from taking effect as a deed, requires that it should be treated as a will. A deed is an instrument which must operate inter vivos; and here the instrument cannot operate in that way, it having no legal effect till the death of the party by whom it was executed. This was the intent of the transaction, and therein it conforms to the power conferred by the marriage settlement, which contemplated that an appointment by deed should take effect during the coverture, and put an end at once to the marital rights of the husband, whereas, if by will, that it should not be effectual until the determination of the coverture by the death of the feme. The true question is as to the essential nature of the act, and that being testamentary it must be made to operate accordingly. To hold otherwise would be to decide that the substance must give way to the form of the transaction, which is against the well established doctrine.
I do not perceive any force in the objection, that the endorsement made by the direction of the decedent is not to be considered a part of the instrument. Though *458 no part of the instrument, it was a part of the transaction, and hears upon the question whether the act was inter vivos or testamentary. Neither the delivery of a deed nor the publication of a will, is a part of the instrumellt:: diey both lie in parol, and yet are legitimate and important matters in the proof of its execution, to be ascertained by the attending acts and declarations. If in the present case the decedent had acknowledged the instrument to be her will, can it be doubted, notwithstanding its form, that it would have been testamentary ? How then can its acknowledgment as a deed, with a direction defeating its delivery as such, and postponing its effect until her death, produce a different result ?
There is nothing in our statutes concerning the execution of wills that militates against this view of the subject. The revised act of 1819, 1 Rev. Code, p. 375, regulating devises of real estate, (amended by the act of February 1823, Supp. R. C., p. 214,) and the act of 1835, Sess. Acts 1834-5, p. 43, placing bequests of personal property upon the same footing, require the will to be in writing, and signed by the testator, or by some other person in his presence and by his direction, and moreover, if not wholly written by himself, to be attested by two or more credible witnesses subscribing their names in his presence : but they do not prescribe any thing in regard to the form of the instrument; nor do the English statutes of 32 Hen. 8, ch. 1, and 29 Car. 2, ch. 3, the provisions of which we have substantially adopted. In the construction of the English statutes, it has never been held that the testamentary character of the instrument must, of necessity, appear upon its face.
On the contrary, in Greene v. Froud, 3 Keb. 310; S. C. 1 Mod. 117, which was an action of ejectment, parol testimony was admitted to give to a deed the effect of a will. The case is thus stated in Pow. on Dev. p. 9, 10. The plaintiff’s title was by the will of F, *459 which was entitled “Articles of Agreement,” and began thus, “ It is agreed between the said Nicholas and Walter, that Nicholas being sick in body, gives,” &c., in consideration whereof, the said Walter promised to pay several legacies, and the conclusion was, “In witness whereof, the parties have interchangeably set their hands and seals.” And this was delivered as an act and deed. The question was whether this instrument was revocable, which depended on its being considered in law as a will or as a deed; and it was contended that it was the latter species of conveyance, being delivered as such: but it was held per curiam that there being directions given to make a will, and a person sent for to that end and purpose, this was a good will. This decision, it is true, was prior to the statute of 29 Car. but subsequent to that of 32 Hen. 8, which correspond in requiring the will to be in writing, the latter superadding the solemnities of signing and attestation. If the former does not require the testamentary character of the instrument to appear upon its face, neither does the latter.
The case relied on for the appellee of Glynn v. Oglander, 4 Eng. Eccl. R. 179, is not like this in any of its features. There, Sir John Nicholl said, in his opinion, “ the paper propounded is in the form of a letter to a friend, the writer wishing to do something for two families who are there mentioned. The instrument is hardly intelligible for that purpose ; but independent of that circumstance, the whole history and extrinsic evidence as laid in the plea shew that it was not a testamentary act, but a sale of stock for some immediate purpose, and to take place inter vivos.” His subsequent expression that “ the character of the paper must depend on the paper itself,” has reference not to the inadmissibility, but the inadequacy of the parol proofs; which he says, though full and detailed, “ were only explanatory of the objects and amount of the intended *460 bountyand he adds, that “ the whole tenor of the conversations and explanations is, that the benefit was intended as a present gift.”
The learned Judge hardly intended, I presume, to overru^e Previ°us decision in Masterman v. Mabeirly, above cited. There, unexecuted bonds, in connection with the unexecuted draft of a will, (of both which execution was prevented by death,) were, according to the rules of the Ecclesiastical Courts, admitted to pro-bat as testamentary, though neither had reference to the other; it being proved by the parol evidence that the bonds, though in terms inter vivos, were intended in lieu of certain legacies, intentionally omitted in the draft of the will.
I do not mean, however, to intimate any opinion as to the admissibility at large of parol evidence, for the purpose of impressing a testamentary character upon a formal deed. In the present case, my opinion is founded upon the special circumstances, established by the unquestionably legitimate probat evidence ; and indicating clearly to my mind a testamentary and revocable act. I have the less hesitation in coming to this conclusion because it can tend to no injustice or injurious precedent. Whereas if we refuse the probat of this paper on the ground that it is not testamentary, it must lead to a renewed litigation in a different forum, upon the question of its perfection as a deed ; and if there rejected for want of delivery, it must fall to the ground between the two jurisdictions: and so the manifest intent of both the donor and donee of the power will be defeated upon objections foreign to the merits. Such a result would be a mockery of justice, and a sacrifice of the substance for the shadow.
There is no weight, it seems to me, in the argument, that the direction of the decedent endorsed upon the instrument, is proved by the testimony of only one of the subscribing witnesses. The statutes do not prescribe *461 the number of witnesses by whom a will shall be proved, but the number by whom it shall be attested. Any one of the subscribing witnesses may prove the due execution of the will, and its due attestation by himself and the others; and if his testimony be satisfactory it is sufficient. Pow. on Dev. 637-8; Longford v. Eyre, 1 P. Wms. 741; 3 Stark, on Ev. pt. 4, p. 1692. Whether all the attesting witnesses, or at least the number required by law, must be examined is a different question. In an action at law where the case demands proof of the execution of the will, it is sufficient to call any one of the subscribing witnesses, who on production of the will can swear to its execution by the testator and the subscription by the witnesses in his presence. It is only where the witnesses have signed separately, so that one can only prove his own act, that they must all be called. But in the Court of Chancery, or upon an issue out of that Court, the rule is to require the examination of all the subscribing witnesses, if to be had, 3 Stark. on Ev. pt. sup.; Pow. on Dev. 643 ; and the same rule governs a Court of Probat. In none of these tribunals, however, is it indispensably necessary that the material facts should be proved by more than one of the subscribing witnesses. If this were otherwise, then the proof of a duly attested will might be defeated by the death or forgetfulness, or perjury of some of the witnesses. Upon this doctrine, most of the cases are stated in Pow, on Dev. p. 637-8; some of which I will briefly notice.
In Longford v. Eyre, above cited, it was held that one witness is sufficient to prove what the rest have attested, for the statute does not direct the will to be proved by throe credible witnesses.
Dayrell v. Glasscock, Skinner’s R. 413; $. C. Ca. Temp. Holt 742, shews that it is not necessary that all the witnesses should prove the fact attested; for it was ruled per Holt, Ch. J. at a trial at bar, that if there were three subscribing witnesses to a will, this was sufficient *462 within the statute of frauds and perjuries, though upon the trial one of them would not swear that he saw the testator seal and publish his will; for otherwise it would be in the power of a third person to defeat the will of t^e deceased; and, therefore, if it was proved to be his hand, and that he set it as a witness to the will, his lordship held that sufficient.
Hudson's Case, Skinner’s R. 79, was a trial at bar upon a devise, where on one side two of the witnesses swore that the devisor did not publish the instrument as his will, but that another guided his hand, and that the testator made his mark, and was incapable of saying any thing. But their testimony was discredited, and the will established.
In the last mentioned case, Pemberton, C. J. cited Digges's Case, where a scrivener wrote the will, and two other persons with him were witnesses: the scrivener swore that the testator was compos, and the two others swore that he was non compos. But the verdict found the will a good will, and the two witnesses were committed to the Fleet.
- So far from one witness being insufficient, if he proves satisfactorily the material facts, including the attestation of the rest, a will may be established against the evidence of all the subscribing witnesses. In Lowe v. Jolliffe, 1 ffm. Black. R. 365, which was an issue devisavit vel non out of chancery, three subscribing witnessess to the testator’s will, and two to a codicil, and a dozen servants to the testator, swore that he was utterly incapable at the time of making the supposed will or codicil, and at any intermediate time, of making a will or transacting any other business. To encounter which evidence, the counsel for the devisee examined several nobility and gentry of the county, who were with the devisor the day the devise was made, two physicians who occasionally attended him, and several other material witnesses; who all strongly deposed to the sanity *463 of the testator. And the will and codicil were established against the testimony of the subscribing witnesses.
Let us next look to the paper marked F, dated the 7th of October 1843, and propounded as a codicil, the attestation of which is objected to as defective. In the usual place for the names of subscribing witnesses, we find those of two persons, one below the other: the first put thus, “ Written by S. /S'. Ashtonthe second thus, “ Witness Ann R. Ashton.” It is urged, as I understand the objection, that this cannot be treated as an attestation by /S. /S'. Ashton; or at least that it must be considered a special attestation, confined to the fact that the paper was written by her. She has been examined as a witness, and it appears from her testimony that she wrote the paper, and at the foot of it the words, “written by S. S. Ashton for,” intending to add the name of the testatrix, if the latter should be unable to authenticate the paper by her own signature j and that when this was mentioned to the testatrix, she did sign her name to it herself; and when about to do so, the witness struck out with a pen the word “ for,” which at first followed her own name, and was intended to precede that of the testatrix, if it were found necessary that the latter should be written by the witness. The testatrix requested Ann R. Ashton to witness the paper, which she accordingly did; and then also requested /S'. /S'. Ash-ton to do so, but she thought and told the deceased that it was not necessary for her to sign it again, as her name was already there in the manner above stated.
Our statute of wills in relation to real estates, 1 Rev. Code, p. 375; Sup. Rev. Code, p. 214, conforming substantially to the English statute of frauds, 29 Car. 2, c, 3, <§> 5, requires the will (if not wholly written by the deceased,) to “be attested by two or more credible witnesses, subscribing their names in his or her presence;” and now, by our act of 1835, Sess. Acts 1834-5, p. 43, *464 wills of personalty are placed in this and other respects upon the same footing as wills of realty.
It will be seen that the statute requires the will to be attested by witnesses, but does not prescribe what, nor that any facts shall be stated in their attestation. I think it plain that the Legislature meant nothing more, than that the instrument itself should be attested, in order to identify the witnesses, and designate who are to prove its due execution. The object was not to obtain from the witnesses a certificate of the essential facts of the transaction, but to provide the means of proving them by persons entitled to confidence, and selected for the purpose. The subscription of their names by the witnesses denotes that they were present at, and prepared to prove, the due execution of the instrument so attested, and nothing more. The attestation is the act of the witnesses, and it was not intended to confide to them the duty of stamping their testimony upon the paper, which could avail nothing as evidence, however perfect, and which ought to occasion no estoppel, however imperfect. This view of the statutory provision is in effect sustained by the English decisions.
That the subscription of the witnesses be made in the presence of the testator, is, by the statute, indispensable to the validity of the'will; and, therefore, if the attestation ought to state the essential facts of the transaction, it would be fatally defective if that circumstance were omitted. And yet it has been held by the English Courts, in several cases, that though the fact of the subscription of the witnesses in the presence of the testator be omitted in the attestation, it does not affect the validity of the will; for in those cases the witnesses being dead and their hands proved, it was admitted as evidence to the jury of a compliance with all the circumstances. Hands v. James, 2 Comyn’s R. 531; Croft v. Pawlet, 2 Stra. 1109; Brice v. Smith, Willes’ R. 1. So, too, it has been held that the subscription of the *465 witnesses to an attestation which only contains the words “sealed and delivered by,” &c. is sufficient; Trimmer v. Jackson, 4 Burnes’ Ecc. L. 130, though sealing and delivery are wholly immaterial to the validity of a will, Now if a special attestation of the facts omitting an es- ° sential circumstance will do, it follows that a general attestation omitting them all is enough.
I think it clear that the subscription of the witnesses is substantially the attestation contemplated by the statute ; and it is sufficient if the purpose be indicated by the briefest memorandum, or merely by a fair presumption arising from the local position of their signatures upon the paper: and that whether a memorandum of attestation be general or special, it may be denied or contradicted by the subscribing witnesses, in the whole or in part, and of course is open to explanation if in any wise ambiguous.
I cannot doubt, therefore, that the attestation by Miss iS. 18. Ashton of the paper F, is sufficient, under the statute. It is not to be presumed that she placed her name there merely to attest the circumstance that the paper was written by her; a fact utterly insignificant in respect to the legal authentication of the instrument. Her subscription alone was a sufficient attestation, and the memorandum does not disprove it was so intended. At most, it can only call for explanation, and that given by her testimony is completely satisfactory.
But the question is not merely whether the attestation be sufficient under the statute; inasmuch as it must conform, to the power which authorized the testamentary appointment. If, however, the attestation required by the power be the same with that required by the Legislature, there is no reason that I can perceive, why the rules applicable to both should not be identical. If a power merely authorizes an appointment by will, aud is silent in regard to attestation, the case must of course be governed by the general rule of law upon the sub *466 ject. And so where the power requires an attestation, but indicates none different from that contemplated by the statute, what reason can there be for exacting a greater degree of formality in the one case than in the other ? To do so is to make a distinction without a difference, in defiance, it seems to me, of common sense and practical convenience. And yet this is what the English Courts have done, by a course of adjudication commencing in the year 1812, and continued down to the present time.
These English decisions appear to be founded on the idea, that when the grantor of a power of appointment designates the instrument to be employed, and how it is to be executed, and requires that it be attested by witnesses, he does not contemplate a general attestation of the execution of the instrument, but a special attestation of the prescribed formalities.
Thus where a power was required to be executed with the consent of certain persons, testified by any writing under their hands and seals, attested by two or more credible witnesses; and it was executed accordingly; but the attestation contained the words “ sealed and delivered” only; it was certified to the Lord Chancellor by the Court of Common Pleas, against the opinion of Lord Chief Justice Mansfield, that the power was badly executed. Wright v. Wakeford, 17 Ves. R. 454; 4 Taunt. R. 213.
That case was followed by Doe v. Peach, 2 Maule & Selw. 576, where a power to two persons was required to be executed by any deed or writing, under both their hands and seals, to be by them duly executed in the presence of, and to be attested by two or more credible witnesses. A deed exercising the power was in fact so executed ; but the attestation contained the words “ sealed and delivered” only, omitting the word signed. And the Court of King’s Bench held that the power was badly executed; though the body of the deed itself *467 stated expressly, that it was “ under the hands and seals of both the donees, attested by, and duly executed in the presence of, the two credible witnesses whose names are thereupon endorsed as credible witnesses thereto.”
Then came the cases of Wright v. Barlow, 3 Maule & Selw. 512, and Moodie v. Reid, 7 Taunt. R. 355; 1 Madd. R. 516 ; the former of a deed, and the latter of a will, to the like effect.
These decisions are commented on by Mr. Sugden in his valuable work on Powers, and demonstrated to be unsound in principle, and irreconcilable with the adjudications upon the statute of frauds. Sugd. on Pow. 317-331. He states that the alarm which they occasioned in the public mind led to the passage of the act of Parliament, 54 Geo. 3, ch. 168; but that act is merely retrospective, and has no effect upon subsequent cases.
Since that statute, the Courts have gone on in the same line of adjudication, in cases not embraced by it, as before; and the decisions upon the execution of powers have gone this length, that if the grant of a power requires it to be exercised by a writing under the hand of the donee, though the witnesses saw the party in the act of signing, yet if the attestation clause omit to insert the word signed, it is a bad execution of the power ; and parol evidence is inadmissible to prove the fact, in opposition to the omission in the attestation clause. Allen v. Bradshaw, 6 Eng. Eccl. R. 283; Waterman v. Smith, 16 Eng. Cond. Ch. R. 629, and the note there.
The decisions of the English Judges since our separation from the mother country are doubtless entitled to great respect, but are not obligatory as authority here ; and when evidently founded upon incorrect principles, and especially if repugnant to the habits and course of business of our own people, ought not to be adopted by the Courts of this country. The adoption of the doctrine in question would, with us, defeat most wills made by virtue of powers of appointment, unless executed un *468 der the careful direction of counsel learned in the law. In. the case before us, it would equally condemn the attestation of both the subscribing witnesses to the paper F, and would be fatal to most of the testamentary paPers propounded in the cause. And in all such cases, it would utterly proscribe a general attestation of the instrument by the subscribing witnesses.
After what has been said, the case, it seems to me, is free from further difficulty. The will itself is liable to no objection, and both parties have concurred in its admission to probat. The testimony of the subscribing witnesses to the paper F, is sufficient to prove that it was duly signed, sealed and attested, in conformity with the power. This is equally true in regard to the paper E, of the same date, also propounded as a codicil. The paper B, propounded as a codicil, and dated the 10th of February 1840, has not been duly executed, it appearing upon its face not to have been sealed by the testatrix; but the objection is removed by its express recognition and confirmation in the codicil E. Lovelass on Wills 304; Law Lib. vol. 25, p. 163; Habergham v. Vincent, 2 Ves. jr. R. 228; Smart v. Prujean, 6 Ves. R. 560; Hume v. Rundell, 6 Madd. R. 331. The paper O, I have already shewn to be testamentary in its character, and in all respects duly executed. The paper D, dated the 11th of March 1843, also propounded as a codicil, is defectively executed, having but a single subscribing witness; and I cannot perceive that it has been recognized by any of the other testamentary papers.
This objection to the paper D, it is argued by the appellants’ counsel, ought not to prevail, inasmuch as it merely presents a case of a defective execution of a power; and that the consideration for the appointment being meritorious, a Court of Equity would supply the defect. It is therefore contended that the Court of Pro-bat ought to admit the paper, subject to the action of the Courts of construction. But, without expressing an *469 opinion, whether in Virginia the Court of Probat must not in all cases be satisfied that the power has been duly executed; how can we get over the difficulty that the paper has not been duly proved as a merely testamentary act ? Besides, if this be a proper case for relief in equity against the defective execution of the power, (as to which I express no opinion,) the admission of the paper to probat as testamentary is not a requisite preliminary, (as it is upon the question of construction whether the power has been duly executed, 2 Wills’ Ex’ors 42,) inasmuch as a Court of Equity, in a case of defective execution, acts not upon the instrument, but upon the person in possession of the estate, by compelling him to make good the defect. Sugd. on Pow. 346.
Upon the whole case, my opinion is that the sentence of the Circuit Court is correct in admitting to probat the paper propounded as Mrs. Glassell’s will; and that there is no error in rejecting the paper D, propounded as a codicil; but that it is erroneous in rejecting the papers propounded as codicils, marked B, C, E and F.